Our last case this morning is Brian Stephen Veltman v. Department of the Army, 2022-2135. Mr. Harrington, we're ready when you are. Good morning, Your Honors, and may it please the Court, I'm John Harrington for Petitioner Brian Veltman. The Merit Systems Protection Board erred in finding, contrary to the substantial evidence that Mr. Veltman did not engage in protected activity under the Whistleblower Protection Act on several different occasions in 2019 and 2020. Those reported concerns on the part of Mr. Veltman involved his concerns that the contractor, Gilbane Federal, whose work he was monitoring as part of his role as a construction control representative for the Corps of Engineers, was seeking improper payments for either, in different occasions, work that it was either required to do by the contract already, or for modifications caused by its own negligence, or payment for uninstalled work, for example, uninstalled server racks, and seeking payment for deficient installation of, in a particular instance, improper plastic anchors, and finally, improperly reporting testing results regarding a concrete wall in August of 2020. These disclosures were made by Mr. Veltman to his first-level and second-level supervisors, Bruce Bay and Ken Ward, again, on multiple occasions beginning in June of 2019 and continuing through August of 2020. The administrative judge improperly held Mr. Veltman to a higher standard than is warranted by the WPA by consistently finding that he failed to establish fraud in reporting his We think what he was reporting in terms of the contractor seeking payment for work that had not been completed, or that had not been completed properly, arguably did rise to the level of fraud, but that is not Mr. Veltman's burden. The case law of this Court and the Board itself is clear that what Mr. Veltman needs to do is demonstrate that he is reporting a concern that involves a violation of a law, rule, or regulation that he reasonably believes involves a violation of a law, rule, or regulation. And what he was reporting certainly rose to that standard, and it is more than a mere policy disagreement. And again, the administrative judge inflated Mr. Veltman's burden by explicitly requiring him to have demonstrated fraud on the part of the contractor. He was a probationary employee, right? Mr. Veltman, yes. He was hired in 2019, and I think he was still within his two-year probationary period. Now, is that irrelevant to what we're considering here? I believe it is, Your Honor. I think what's relevant here is whether Mr. Veltman engaged in the protected activity in 2019 and 2020. But the Board found that no protected action contributed to his reassignment, or that there was not a hostile work environment. Those were the Board's findings, and I believe that is error on the part of the Board, and it's contrary to the substantial evidence. Mr. Veltman's work as a construction control representative involved inspecting the work done by the contractor, and specifically determining whether percentage of work, completed work claimed by the contractor, was accurate, and whether the contractor had met contract specifications in performing its work and installing its materials. Part of Mr. Veltman's role was to determine whether those specifications had been met, and whether payment should be made. He repeatedly told his first- and second-level supervisors that he thought payment should be withheld, either because the work had not been done properly, or that the contractor was claiming a higher percentage of work had been completed than actually had been completed, or that they were seeking payment for work that they were already required by the contract to perform. And again, those were dismissed by the AJ, we believe, erroneously as mere policy disagreements. The Corps of Engineers argued, at least in part, that it was required to make payments to the contractor under the Prompt Pay Act, but that act itself only requires payment for work completed per contract specifications, and certainly required or supported the agency withholding payment until deficiencies were corrected. So, we believe Mr. Veltman not only can establish that those reports, which the Administrative Judge found were not protected, were in fact protected, and further, the Administrative Judge did not engage in any analysis as to whether those particular reports were a causal and meet that causal connection, and showed that those protected disclosures, once they are properly found to be protected, were in fact contributing factors to his termination. If we do not, under the proper standard of review, find any additional protected disclosures or protected actions, so if, as we review the record under the standard of review, it's just the one protected disclosure that the Board found and the one protected action that the Board found, right? That was all they found in your favor, correct? Correct. Yeah, correct. Can you meet the causal burden just from those two, or would you acknowledge that the case is over at that point? It would be difficult to meet the causal standards based solely on those two protected activities, because those refer to Mr. Veltman reporting his concerns to the Criminal Investigation Division, which the record is not clear that his supervisors were aware of, and a later report very close to his termination about a sewage backup that the judge did find was protected, but the record shows the timing, the termination decision was underway when he made those disclosures. So our focus really should be on how many more of the other five or so acts that you say are protected should have been found protected. That is correct, Your Honor, and all of those disclosures were within the two-year period that this Court and the Board has found satisfies the knowledge timing test for a causal relationship, and Mr. Veltman made these reports on numerous and multiple occasions to his supervisors from June 2019 through August of 2020, and I think he can certainly satisfy that knowledge and timing test. There is nothing in the record that shows that the agency met or could meet its burden to show by clear and convincing evidence that it would have terminated Mr. Veltman, even if he had not engaged in protected activity. There is nothing in the record to show that anyone other than Mr. Veltman has ever been to the Corps of Engineers because he or she swore on a construction site. There is testimony that swearing on a construction site was common, and certainly that is what the agency has pointed to as the justification for Mr. Veltman's termination. And again, the complaints about Mr. Veltman, where he did swear at someone on the construction site because he had repeatedly told them they were parking in the wrong place. Complaints about that incident and others involving Mr. Veltman similar to that were made by a contractor who was himself removed by the contracting company because of his conflicts with construction control representatives, including Mr. Veltman. But fundamentally, Your Honors, we believe the administrative judge erred in not finding these other reports by Mr. Veltman were protected under the WPA, and she did not properly consider the countervailing evidence on behalf of Mr. Veltman regarding both these disclosures and the causal link between those closures and his termination. And for those reasons, we believe this Court should reverse and remand. And I will reserve the remainder of my time unless you have other questions. We will save it for you. Thank you, Your Honor. Ms. Kirshner? May it please the Court. Initially, the Court has, I think it's resolved that the two items, the protected disclosure in January of 2021 and then the protected activity of going to the Criminal Investigations Division, those are really out of the case because there's no contributory factor established on the record. So I'll move on to the period of time from 2019 to 2020 when Mr. Veltman is contending that he made protected disclosures. Now, what's being ignored in this case is the very detailed findings that the judge made on the testimony of Mr. Veltman and the testimony of the other witnesses and the documentary evidence. There are essentially two prongs to the judge's decision. First of all, what's being ignored is that the judge found that Mr. Veltman did not make the disclosures. He did not make the reports that he's claiming to have made. And that's at pages 13 and 14 of the judge's decision. Now, the judge based this on his credibility determinations. He found that Mr. Veltman's testimony was not credible. And he specifically noticed his demeanor. He said when he was asked for the specifics of these communications, his demeanor was evasive. That's an exact quote from the judge's decision. And he... What you have to do with those findings are virtually unreviewable. Yes, Your Honor. And so that's the part of the decision that's really being ignored. The finding that these reports are fraud that he claims to have made, the judge finds that that is not a credible testimony. And then the judge also goes on and considers the other witnesses' testimony. And specifically the testimony of Mr. Ward, who was the resident engineer as well as a contracting officer. And he credits his testimony. And specifically, for example, Mr. Ward testified that Mr. Veltman never used the word fraud. He never brought to his attention anything that appeared to be fraud. He never spoke to him about the contract modification. That goes to Gil Baines' request for a contract modification for the equipment that the government was providing on-site, which had stood there for years, and by the time you're getting now to use it, the equipment was defective. So it had to be repaired. Mr. Ward testified that that issue was never raised by Mr. Veltman with him. So, you know, all of this testimony from Mr. Ward is credited. And Mr. Ward also explained the payment application process. And I just want to take a few minutes to go through that. What he explained is that the contractor uses a computer program, which generates a schedule. And it has thousands of items, line items of work in it. And each line item is assigned a price or a value. And then when the pay application is generated, you have all of these thousands of line items. And Mr. Veltman would walk the site with the contractor's representative, and they would look at the various items and try to come to an agreement on the percent complete of each item, whether it's 10, 20, 30. They try to arrive at an agreement. And if there's no agreement, then that disagreement goes to the contracting officer's representative. And if an agreement is not reached there, then it goes to the contracting officer, which would be Mr. Ward. And Mr. Ward explained that, ultimately, this is a guess estimate. He used exactly that word to describe it. It's an estimate, a guess estimate. And he also explained that if he doesn't agree with the contractor and he allows only 30%, well, that's all right, because if he makes progress, then he'll make it up in the next payment application. So all of this testimony was credited. And also the judge credited the testimony of Mr. Hudson, who was in the exact same position as Mr. Veltman, and Mr. Hudson gave essentially the same testimony, for example, page of the appendix 364. And the judge made a specific finding that Mr. Hudson was essentially a disinterested observer, someone with nothing at stake. And his testimony also was credited. Now, what that results in also is the finding that Mr. Veltman, not only did he not make these communications that he's asserting he made, he did not have a reasonable belief. He did not have a reasonable belief that the government engaged in any violation of law, rule, or regulation, or any gross mismanagement. And for all those reasons, Mr. Veltman never made out his prima facie case. I'd just like to touch on the Prompt Payment Act, which was mentioned for the first time in the reply brief. We're not really sure why they're raising it in their reply brief for the first time, but essentially what that act does is it requires the government to pay interest in certain circumstances. For example, if the pay application is all agreed on and it's undisputed, and we just don't pay it on the day it's due, and we're late, for whatever reason we're late, then we have to pay interest. So that's what the Prompt Payment Act requires, and I really don't see why they're raising it here. What the government's obligation was in this case was to follow the contract clause. And we cited the contract clause, which was explained by Mr. Ward. The contract clauses are 48 CFR 52.232-5 and 52.232-27. And specifically, these are the contract clauses that talk about percent complete and making a monthly payment each month. And what you're paying for is progress. So even if there's a deficiency, as Mr. Ward testified, we can't hold up a payment as long as there's progress. So we pay for the progress on the job and fulfill our contractual obligations. I just would like to note, so that the court doesn't become confused perhaps, that the 48 CFR 52.232-1, those regulations actually do not apply. Those are regulations for fixed-price supply contract and a fixed-price service contract. What we have here is a fixed-price construction contract. I also think it's clear that the judge applied the reasonable belief standard. He's not holding Mr. Veltman to a higher standard. He's just finding that his belief is not a reasonable belief. And here, what the judge found to be similar was that this is a discretionary process. The payment of a pay application is a discretionary process, and he's not pointing out, Mr. Veltman's not pointing out any violation of law, rule, or regulation. It's just simply a discretionary process. So if the court has no further questions, we would ask that the decision be affirmed. Thank you, Ms. Koshner. Mr. Harrington has some rebuttal time. Thank you, Your Honor. Respectfully, we believe that the administrative judge did not properly analyze Mr. Veltman's credibility, and there is very little discussion as to why she found his testimony as she characterized it. It was particularly, really, the only specific reference to his credibility is a lack of specific dates in some of his testimony and when he made these disclosures, a lack of some specificity. But most, if not all, of these disclosures that I referenced earlier were acknowledged by Mr. Bay and Mr. Ward as having been raised to them. Certainly, as my friend has explained, the agency has argued that Mr. Veltman's concerns, that they disagreed with his concerns and that the payments that he was resisting were payments that they believe should be made to the contractor. But, you know, this is still protected activity on the part of Mr. Veltman in his consistent raising of concerns that Gilbane Federal was seeking payment either for work it had not performed or that it had performed deficiently or that it was required by the contract to perform already. And seeking modifications for work that was already required of the contractor was a violation of a law, rule, or regulation. And seeking progress payments for progress that had not been made is a violation of a law, rule, or regulation. And the AJA also did not apply the same Helen credibility analysis to the testimony of Mr. Ward and Mr. Bay that it appears was applied to Mr. Veltman. But Mr. Veltman did testify credibly. Mr. Bay and Mr. Ward acknowledged that he raised these concerns to them. And the fact that he was called out in the board's initial decision for not having specifically used the word fraud is an example of him being held to an improperly high standard. The case law is clear that he doesn't need to use any sorts of magic verbal formulations including using the word fraud. And all he needs is a reasonable belief that he is opposing payment where payment should not be made to the contractor. And for these reasons even though the agency ultimately disagreed with Mr. Veltman his concerns were protected under WPA. And he can show that those protected concerns contributed to his termination and the agency cannot meet its burden to show by clear and convincing evidence or any evidence that he would have been terminated had he not raised these protected concerns. And with that I will end my remarks. Thank you both. The case is submitted. That concludes today's arguments.